We run as the first case in the morning call 218-07-21 Centegra Hospital McHenry v. Illinois Health Facilities and Services Review Board as well as Mercy Crystal Lake Hospital On behalf of the Mercy Health Corporation Mr. J. Timothy Eaton On behalf of the Illinois Health Facilities Services Board Mr. Richard S. Cusick On behalf of Centegra Daniel J. Waller On behalf of the Illinois Health Facilities and Services Review Board Mr. Hal Mora On behalf of the Illinois Health Facilities and Services Review Board We have determined that there was a need for a right-sized acute care hospital with emergency care services in Crystal Lake and, importantly, it could be accomplished by redeploying beds from an underutilized Mercy health care facility in Harvard, Illinois so we would have the least impact on area hospitals The administrator of the McHenry County Public Health Department said in support of the proposal this measured proposal is not seeking to increase the licensed beds but rather to redistribute beds to where they are needed allowing them to further their mission in Crystal Lake is both critical and responsible How many beds are in the Harvard Mercy hospital at this point? Fifteen surgical beds and there's four acute ICU beds and there would be a transfer in 11 to Crystal Lake and two of the ICU beds and, Your Honor, the utilization rate of those beds I think the ICU beds is as low as 3% so they're really not being used and I think it's 30% for the medical surgical beds and so 11 of those would be transferred to the Crystal Lake facility and two of the ICU beds So they would both be smaller hospitals in two different pretty, not distant, but at different ends of the county for all practical purposes Yes, that's correct Mr. Eaton, the issue seems to be that your opponents are focusing on  and that it is not in compliance with the criteria What is your response to these quote-unquote micro hospitals and how do you overcome the fact that you did not comply with that standard in the statute of the 100 beds? Sure Your Honor, first of all the word micro hospital has been used intermittently throughout the record It is a hospital It will be licensed by the Illinois Department of Public Health as a hospital So I just wanted to clarify that Isn't it more like akin to like a surgery care center? I mean this size and the basis, the reason for these beds? Well, the reasons for the beds First of all, it provides for the first time in Crystal Lake an emergency department So emergency services can be provided to that community and that was very, very important to the Board in making their decision and I'll come back directly to your question but when the chairman of the Board, Chairwoman Olson voted she said, I'm going to vote in support based on the fact this is not changing the bed need area and the planning area I don't think that a 13-bed facility is going to have a huge impact on the larger providers I think the emergency department access is necessary and I applaud the access for Medicaid and charity basis Your Honor, the Board was given the statutory authority to come up with review criteria that they could look at and decide on each project and as this Board is held in Medicare which is dealing with nursing homes the Board looks at each project individually and makes a decision and they look at each criterion each of the criterion individually and make their decision There is a criterion that you referenced with respect to a 100-bed minimum but as the case law has made clear I think Marion Hospital is the most significant case although Provena also repeated what they said is that even though they say must or minimum there is no mandatory requirement They have to consider it and they have to decide what's best for this particular project and in this case they thought it was important based upon the community support for a hospital a smaller hospital in Crystal Lake and rather they don't want to come up with well let's just put 100 beds in there well that wasn't the need so they had to evaluate all the criteria so they looked at that criterion they considered it, it was discussed at the hearing and in voting the various members of the Board said we understand that it doesn't meet that particular criterion but we think this is the right size for this particular project in Crystal Lake How do you reconcile a matter of care talking about each project being looked at individually with cases that talk about sudden and unexplained changes to policies and procedures that have been considered to be arbitrary? Your Honor, this wasn't a sudden and unexplained deviation from the criteria This Board has approved a number of facilities that have had less than 100 beds What they did in this particular instance was they looked at the need for this project in Crystal Lake and they made the determination based on public support based on the Henry County support that it was needed and I also would direct your attention to the case of Marion Hospital which had a requirement I know, for the heart surgery Yes, exactly and what the court said, I believe it was a First District case they said there's no way that they're going to be able to project that they would have 200 open heart surgeries in the second year and that criterion said they must have a minimum of and the appellate court in that instance said you know, there's no way that you're going to be able to provide for health care in rural facilities if you read these as mandatory These are the Board's criteria These are not the legislature's Right, but the Vice Chair made a comment about changing the criteria and then looking at something as opposed to disregarding the criteria which appears to be, at least from first glance or at least arguably arbitrary Your Honor, first of all, they did not disregard the criterion involved They discussed it They asked questions of Mercy Health's CEO when he was before them They asked questions of the consultant, Ralph Weber when he was before them They carefully reviewed it and if you look at the staff report where they received negative findings based upon the need in the area the staff report recounted the fact that this would be a transfer of beds that were not being used in Harvard to Crystal Lake So there was a balancing in this particular case and they decided that based upon all of the facts all of the criteria what Syntagra and Advocate want this Court to do is step into the shoes of the Board and make that balance and this was not They considered everything where I respectfully disagree with the trial court's decision and I know that's not here before this Court It's the decision of the Board but he suggested it was arbitrary and capricious because they disregarded that criterion Nothing could be further from the truth They did not They discussed it They evaluated it They weighed it and not one criterion the case law said controls the outcome You look at all of them and in each case as in Manicure I think this Court was very clear in saying each project is different You look at the need You look at what the community wants and then you make a decision based upon the expertise of the staff based upon the public support and based upon the Board's experience So this was not a case where it was arbitrarily considered Mr. Eaton Characteristic of my morning Apparently our timer isn't working So if you would like to address another point quickly you'll have an opportunity to respond Sure, absolutely Because I know Mr. Hussack is going to be speaking for the Board and I don't want to use up any of his time What I wanted to say is that in this particular case the Board determined that there was a need for this acute care hospital in Crystal Lake They weighed all the factors They got the public support both pro and con and they made a decision and they exercised their expertise in doing so and we would ask the Board excuse me, we would ask the Court to give differences to the Board Thank you All right Then Mr. Hussack Hussack Hussack, thank you And I will have to probably stop you too because he's telling me he's raising his hand and it doesn't work Thank you, Your Honors May it please the Court Counsel, I'm Assistant Attorney General Richard Hussack Counsel for the Board in this case and I urge the Court to affirm its decision because it is supported by the factual record presented in this administrative proceeding and it is not contrary to the law What about the concern as Justice Burke has addressed of the, I guess, the Vice Chair who said maybe we should look at our criteria before we start making decisions of this nature I think the plaintiffs' apologies in this case have presented a false choice They said that either you apply these criteria and the minimum bed criterion is given dispositive weight or you have to repeal them and those are not the choices The Board clearly was aware of the minimum bed criterion considered it relevant, gave it weight but in light of its discretion which the statute gives it determined that the weight to be given that criterion was overbalanced by the other circumstances in this case There was an unmet need for services in this area and if they had insisted upon that need being met by a 100-bed hospital they would have massively increased the overcapacity and that's one of the factors that the statute is intended to avoid The Board is charged by the statute with balancing the meeting unmet needs and avoiding overcapacity or underutilization and that's something that they're good at doing They have long expertise in doing and so I think the argument that they disregard this criterion is wrong They considered the criterion It was the elephant in the room It was the subject to extensive questioning by the Board members and extensive testimony both before the staff in the preliminary hearing and before the Board in the final hearing report Do you feel that your opponents feel that the Board never really explained why such a significant departure was necessary? I suppose you could argue that maybe they should have provided each of them with more detail as to their reasons for concluding that the non-fulfillment of this criterion did not warrant denying the application but since it was in the air everybody had talked about this concern It was the focus of so much of the proceedings along with the unmet need in the community It's not as if there was any mystery about why they were individually voting to support it Most of the members that voted in favor of it specifically referred to their concerns about the staff's findings that some of the criterion had not been met and they then went on to observe that nonetheless the application's approval was justified in light of the testimony given by the participants including Mercy's explanation as to why it incised the hospital for dislocation at that level and that it was not increasing overcapacity in the planning area because it was relocating beds from the heavily underutilized hospital that they had at Harvard So I think in terms of the explanations given there's no real mystery as to why the individual Board members who voted in favor of it believed that non-compliance with that factor did not require denying the application And in terms of the statutory requirement unless the Court has questions I've sort of laid out in my brief that the statute makes very clear that the degrees of specificity and detail that it requires for decisions by the Board depend upon whether they deny an application in which event it has to be detailed and if there's a request for a written decision which was not made here then they have to go through the various factors and articulate how they applied them to reach the result But for an approval of an application the standard is relatively modest and simply says they have to put on the transcript the reasons for their findings that the approval of the application was justified and it does not require that they go through each of the criteria So I think here the statutory requirements were readily satisfied And in any event if there were grounds to conclude the contrary the proper remedy would not be to say it's all over, the application must definitively be denied but rather that the Board must comply with the procedural requirement And there's really no precedent for saying that this is a tripwire If you make one little misstep on a procedural requirement like this it's game over, one side wins That's just not a fair result in any sense of the law The emergency services for this particular area seem to be important to a lot of the participants as well as some of the Board members What is the difference between emergency services and urgent care services? I wish I could speak authoritatively on that subject I have a lay person's understanding I don't even have that To the extent I can help and if the Court wants a further submission we'd be glad to provide it But emergency care is a greater degree of severity Urgent care, and I've been into one of these centers I'm so glad they exist If you have a cut but it's not so severe that you need to be taken to a place where they can immediately snatch the bleeding and give you oxygen or something like that Are urgent care facilities also governed by the Planning Act? Or can they be placed without permission of the Act? I believe they are governed by the Act I can't say that with 100% confidence But there is a basic and important distinction between hospitals and urgent care centers Different criterion? Probably a different criterion Yes, for approval And even though urgent care centers Even though hospitals now are doing more and more outpatient care where somebody doesn't need a bed for the evening a hospital still meets that important need because there are many situations in which the overnight stabilization or care is required as a matter of medical necessity And I ask that because between Harvard and Crystal Lake is Woodstock And Woodstock has a Mercy urgent care facility or doctor's offices in some urgent care And that fills an important medical need but it's not the same as a hospital including an emergency care facility So there are a lot of questions in this case But I think cutting to the essence of what's going on here is what is the meaning of this review criterion that requires a minimum number of beds And did the Board disregard the answer? You call it a review criterion One of your opposing parties categorizes it as a performance criterion A requirement They call it a requirement So does the Circuit Court And that's an incorrect interpretation of it If you look in the supplemental appendix to our reply brief it'll show that all of these fall within the statutes and the regulations rubric of review criteria which section 1130.660 says noncompliance with any of them one or more of them does not require denial of an application So the idea that this is of a different character it has to be satisfied in all cases is legally incorrect The Board properly interpreted its own review criterion And if then noncompliance was not a per se basis for denying the application the question then becomes did the Court act within its discretion or did it in fact act in an arbitrary and capricious way in concluding that noncompliance with this criterion in this case did not warrant denial of the application And the answer to that is it acted within its discretion It did not act in an arbitrary and capricious manner The facts of this case show that these were particular circumstances this was a local geographic area where a hospital of this size was justified due to an unmet need and a larger hospital would have created a worse problem of overcapacity whereas this one did not increase any overcapacity in the planning area So, yes Can you give me an example of a performance standard or performance criteria that would have to be met in any of these or does that not actually exist? You can imagine examples of noncompliance with a performance criterion where the Board would act in an arbitrary and capricious manner by not treating it as requiring denial If you have an applicant's qualification where it's shown that they don't have the financial capability to run the hospital or they've been run out of town in 27 other jurisdictions or something like that because their doctors have lost their licenses At some point, the facts become so significant that this Court would have to say it's arbitrary and capricious for the Board to have acted But I'm not aware of any case or published case in which an appellate court, after reviewing the record carefully which is its job has concluded that the Board has abused its discretion or acted in an arbitrary and capricious manner Why do you think that is? Do you think that is because of the standard of review? That's partly because of the expertise that the Act properly vests in the agency The public interest is sort of an all-encompassing somewhat indeterminate standard that takes into account competing interests One of which is unmet needs and the other is avoiding overcapacity And those are in tension with each other And, of course, you have competitors in a very competitive industry that are each trying to get as many beds in their system and prevent the others from getting beds in their system And the Board is charged with the responsibility as being the neutral broker here in determining what's in the public's interest And I think they have done that conscientiously We're all aware that there was an era in which the Board was corrupted And that's an unfortunate legacy that we all have to look back on and say, may it never happen again But I don't think there's a whisper of a suggestion that there's been any impropriety in this case much less that they didn't take their responsibility very seriously They certainly did And the plaintiffs in this case were given every opportunity to make a case Many of the arguments that they're making here are ones that were properly directed to the Board But once the Board has decided that this application should be approved and meets the public interest even if some of the criteria were not satisfied then this Court's role is to look to see whether they abused their discretion And we submit that it cannot fairly be said that it did Mr. Huzek, the arm has gone up as well for you Thank you so much, Your Honor Thank you And again, I'm going to follow the order It's Mr. Lawler Yes, Your Honor Thank you May it please the Court, Counsel My name is Dan Lawler for the Sintegra Appellees Mr. Lawler, Counsel brings up a very important point He could not find, and we could not find any cases that reversed the ruling of the Board on these types of matters Why do you think that is? Well, Your Honor, I think it is because there is no other case where there has been such an extreme departure from the Board's adopted criteria Let me give you some examples Well, you know, you talk about manor care and you say that manor care you know, that there wasn't that extreme a departure but doesn't manor care tell us that we apply the same method to evaluate all of the cases regardless of, like with the differences as long as you apply the same method you're going to come out with the same you might come out with your outcome even if there is an extreme difference between, say, your case and another case Well, I agree with that I agree that the Courts review the Board's decision all on the same basis and what the Courts do And the Board reviews all of the criterion on the same basis, allegedly They're supposed to They're supposed to because when they adopt a criteria that criteria has the force and effect of law and this Court held in Heavner that a Board is bound by the criteria that it adopts Now Well, one of the regs says that they can they can disregard the criteria They can approve a project where the criteria does not meet fully 100% the criteria Now, what the Courts have done in the Mercy Crystal Lake case which involves Sintegra Hospital-Huntley that's a perfect example of what the Courts are doing The Third District in the Mercy Crystal Lake case did not say that because Sintegra met 17 criteria that outweighed or justified noncompliance on 3 criteria Rather, what the Court did was it looked at Sintegra's evidence on the negative criteria and found that that evidence justified the Board's approval of the project The same thing with the Provena Health case which involved Sherman Hospital The First District in that case did not say that because Sherman Hospital met 14 criteria that justified or outweighed noncompliance on the negative criteria The Court looked at the hospital's evidence relating to the noncompliant criteria and held that that evidence supported the Board's decision in the case Now, isn't that the same here? I mean, at least arguably that the Board looked at the evidence on why this criterion was not met 10 versus 100 and said that the needs of the community warranted it Your Honor, your point there is why this case is very much like Manor Care In the Manor Care case this Court did not say because the applicant met 17 criteria that outweighed the 3 negative criteria This Court said, rather that the applicant there just like Mercy here said that noncompliance was no impediment to approval and the applicant presented no evidence showing any type of compliance with the negative criteria and this Court affirmed the Board's denial of that application based just on those 3 criteria But it doesn't just have to be the evidence presented by the applicant The Court or the Board should consider evidence presented across the Board Your Honor, that's exactly what happened in the Sintagra Hospital-Humley case Our friends at Advocate were opposed to the project and the negative findings there were all on utilization on what would be the projected utilization of existing facilities We presented expert testimony showing that when our project was completed all the hospitals in the area would be at full utilization They presented expert testimony saying that it was not We also presented the State's own projections showing there would be full utilization when the project hospital came online So what did that tell the Board and the Court? The Board actually issued a finding saying they accepted our evidence and they accepted their own projections So what does that show? It shows substantial compliance It shows that the purpose of the full utilization rule was achieved Is 81%, 81.3% full utilization or substantial compliance with full utilization? Well, let's go back to Manor Care where the Board had a rule for nursing homes that full utilization was 90% and the existing nursing homes were operating at 79% So 90% versus 79% that was not substantial compliance with the rule What do we have here? 100 beds versus 10 beds 60% ICU utilization versus 17% utilization By no stretch of the imagination can that be substantial compliance here? I'm asking about Advocate and Centegra You're at 81.3% utilization Is Huntley now in substantial compliance? Well, Your Honor, that application was filed in 2010 and the projected utilizations were based Everybody was Within two years It was supposed to be within two years That's right Did it comply within two years? I think the answer is no But it is a projection That's right It is not It has to be It is a reasonable projection That's right But, Your Honor, at the time we were projecting and the State itself was projecting full utilization In this case they're not projecting full utilization They're saying we're going to only be at 17% versus your 60% criteria The Planning Act says There's a question about which criteria have to be substantially complied with The Planning Act answers that question It says there needs to be a project needs to be in accord with which under Provena Health  the criteria adopted by the Board So if the Board adopts a criteria the Planning Act requires substantial compliance If the Board does not want to require substantial compliance with a criteria it should not adopt it But once it does adopt it it has to be complied with Well, why is it pretty clear in the 77 Administrative Code 1130.660 a failure of a project to meet one or more of the applicable review criteria shall not prohibit the issuance of the permit What's the purpose of that sentence? Here's the purpose, Your Honor And again, Manor Care is the perfect example This Court in Manor Care said there is some types of noncompliance that can be overlooked and some that cannot be And the example given of the type of compliance that could be overlooked was if where the rule required 90% utilization there was a project with 89% utilization and the other facilities in the area would not be adversely impacted by the project The Court said that technically does not meet the criteria but the Board has discretion to approve the project because it's substantially complied There are no additional beds being added as a result of this particular application Isn't that correct? Well, if I may, Your Honor No, you may. I'm asking the question Oh, there are no There are no additional beds added to McHenry County Added to this area What additional beds are they adding to this area? They're taking out of Harvard that is underutilized and they're putting in Crystal Lake Well, there's Those people in Harvard If they get full in Harvard they're going to have to go to McHenry a Centegra facility or up into Wisconsin Critical access patients and at this very moment the Board has already taken those beds out of Mercy Harvard's inventory That hospital now only has got one authorized ICU bed and their peak census is two They're putting critical access ICU patients in beds that are not authorized for ICU and the same with medical-surgical Their peak census for medical-surgical is nine or ten beds They don't even have half that amount now In fact, the evidence in this record is undisputed that Mercy Harvard right now does not have enough medical-surgical beds to even meet its average daily census Isn't there a Mercy up in just over the line in Wisconsin? Isn't there a Mercy facility? Yes, Your Honor If you're a critical access patient how are you going to get there? Let's see, they have a flight pad and there are also ambulances I've seen coming and going I don't know what they're doing but I'm assuming they're taking people back and forth to different places But as you mentioned there are all kinds of urgent care and emergency rooms in this Crystal Lake area It's surrounded by emergency rooms They're not up in Mercy Harvard So this project has a demonstrable adverse impact on Mercy Harvard Where does the Marion case fit into your substantial compliance analysis? I'm glad you mentioned that So what did counsel say? Counsel said the court found that it was impossible for Southern Illinois open heart programs to get to 200 procedures that were required for the criteria Is it impossible for McHenry County to have 100 bed need for a hospital to come in to meet that need? No, it's not impossible That's what Santegra-Humley Hospital was Santegra did not file that application for 100 medical surgical beds until the board's calculated bed need was 100 beds That is exactly the reason and it's in this record the board's ex-officio member from the Department of Public Health said the reason we have that rule for 100 beds is we don't want people coming in with small projects We want there to be a need for 100 beds before somebody comes in with a project for a new hospital That's what Santegra did So that distinguishes this case from Marion The rule's not impossible to meet here Was there mention by one of the board members that they could always re-evaluate the number of beds at a later date? Well, Your Honor the board re-adopted the 100 bed rule while this litigation's been pending So they have looked at it and they've reaffirmed it and they're bound by that rule and they were bound by the rule when they approved this project Counsel, your time has now expired as well If you'd like to sum up your argument I would just sum up, Your Honor that the board has adopted rules The Planning Act requires substantial conformance There was not substantial conformance where the board had used its discretion It was properly reversed Thank you Mr. Morris Thank you, Your Honor May it please the Court My name is Hal Morris I'm here with Elizabeth Thompson on behalf of the advocate, Apolise The discussion that's been had with the Court in some respects makes my notes irrelevant So it's best to, I think, address what the Court has asked about This is a case, as it's been suggested about what are the limits of discretion What we do not see is any line being drawn in that discretion Rather, we have a reference to Section 660 of the Planning Act where the board itself said we can do essentially what we want However, that's not what discretion is under our law Discretion is the exercise of judgment in some legal bounds As identified by the Court already I appreciate that definition but then how does that definition apply to the sentence that I read to Mr. Lawler that, in fact, the failure of a project to meet one or more It doesn't just say one It says one or more of the applicable review criteria does not prohibit the issuance of the permit How does that fit? That can be addressed in two ways The first way it can be addressed is the Court's, and as Justice Burke pointed out ad hoc departures are inappropriate and those are abuses of discretion What we heard today from the appellants is the definition of ad hoc What happened was is that it was right size It was measured It was for a particular unit That is not what these rules are That's the second reason The rules that the board adopted and they are under a very broad if you will, umbrella call criteria but they're not in specific The one that we are dealing with here in Rule subsection F is referred to specifically as a performance requirement with a minimum Each of the other ones are referred to in their title as criteria The difference is the requirement is a minimum acceptable value A criteria is that which you can evaluate and that's what the Court I think suggests should happen under Rule 660 is that you evaluate but here if you apply general rules of statutory construction which the rules of the board are applied like that was a rule that needed to be complied with and it was not As a matter of fact it was flaunted that it was not Mercy's own expert, Mr. Weber testified that we know it doesn't meet the rule but this is what we think is right That is ad hoc As the vice chairman identified at the time of the vote  We change the rule first if it needs to be changed and then we evaluate the project Aren't there many hospitals in Illinois that are less than 100 beds? That's a question that if I just answer it Yes, it leaves hanging Yes, there are but the answer is No, there are not hospitals less than 100 that have been approved in the SMSA Let's say the Chicago or the St. Louis area of less than 100 beds The example that probably will come up is Northwestern's hospital in Lake Forest but that's not a new hospital They simply moved it across the parking lot There are no new hospitals in this SMSA If you go further downstate there are hospitals As a matter of fact, I know there's one in one of my partners in a very small community downstate where the hospital is less than 10 Those are critical care hospitals As a matter of fact under that type of regime do not exceed 25 But here, where we're talking about with the rule that the board had No And what's important is that under the Planning Act and under the rules of the Planning Act that were this board they were to review their rules every two years They had the opportunity to do so and as Mr. Lawler pointed out even with independency of this matter that's one of their rules the 100 bed minimum four bed ICU minimum and they didn't change it By not changing it that's evidence that that's the rule Although I recognize that we're not looking at really what the trial court did The trial court was correct in this conclusion and we would urge this court to have the same conclusion that such a radical departure from a performance requirement requires an articulation and an answer Well you said you know what you're just saying is that the explanation was legally insufficient Yes Because there was no meaningful rationale given for that decision But the Planning Act requires a detailed explanation as to why an application is denied It doesn't say anywhere in there that it's for when an application is granted I don't believe that's necessarily true Section 3960-12 of the Planning Act says specifically that the board shall provide its rationale in voting on an item before it had a state board meeting Did they not do that? They didn't because if we look at what they said if you look at the actual words at the times of the vote board member Brzezinski said specifically the standard for a 100-bed hospital that needs to be addressed as well as looking towards the future That's saying we need to change our rule Member Johnson said and this does cause us to perhaps take a look at the recs again that 100-bed rule Member Murphy simply didn't even talk about the 100 beds But Vice Chair Sewell actually identified the issue and when Vice Chair Sewell voted the response was I think the way this process works is that we change the rules then we apply them to prospective applications and that's what the Administrative Procedures Act provides for Did advocate request a written explanation or a written criteria I'm sorry, a written review? No, there was no request What there was was the so-called permit letter and the permit letter is also telling in its language The permit letter and this is with deference to the state agency is really robotic in what it said It said specifically In arriving at a decision the State Board adopted the State Board Staff Report and Findings Let's pause for a moment What is that Staff Report and Findings? It is a substantial number of performance criteria that are not met as well as a comment a very strong comment that the performance requirement regarding minimum medical, surgical and intensive care unit beds was not met So if we step back and we think is that an explanation as Justice Shostak suggests they're explaining their vote positive by saying we relied on something that was negative That simply is not an appropriate manner or a manner at all that allows meaningful review by this or any court Well, I believe your colleague there said that in the other cases the the board has looked at the negative information and then said well, this is negative but isn't that what happened here in that letter? It wasn't this is negative but here's what we did The letter, no I think once again Because the the Staff Report does have negative information It does have negative But the board never explains that here's a negative statement here's a rule here's not even an attempt to meet it at all It's really we're talking about almost a 90% departure from the 100 bed rule There's no explanation there and why isn't there an explanation there? There can't be There can be no explanation there because the way the board put its rules together it established 100 beds and as we heard that's what Centegra had to wait for The court asked but what about access to emergency room services? There are emergency rooms in surrounding communities approximately 12 minutes away as the record indicates That would be Advocate That's one of the Advocate hospitals but there are other ones In addition depending upon the type of emergency that someone is seeking care at most likely this is not a hospital you would go to with 11 beds It's certainly not a trauma type center that we're familiar with It's not a large university hospital So therefore you wouldn't even be at this one Well is there a large university hospital in this area? No but there are level 2 trauma centers in this area That's true but you know you're talking apples and oranges here They're not going to drive themselves to a level 2 trauma They are going to be taken there They'll be taken That's correct After they have been to an emergency room They will be taken there probably by the fire department or emergency services Correct Or a helicopter Right Or if you're going to drive yourself for some sort of emergent care you most likely as the court pointed out will drive yourself to one of the very almost ubiquitous urgent care centers that are around If you need something more you can go to emergency rooms all the time don't they? Emergency rooms are 24-7 Some do That's correct But even so there are surrounding emergency rooms for full service hospitals to where this location is Because what I think we need to realize is that and this sounds in some respects somewhat flippant that yes everyone would like to have a hospital down the street just like we'd like to have a policeman in front of our house or protect us and a fireman at the end of the block just in case a fire breaks out But what this board has established is when do we need those things and those needs have been established through the rules and the regulations which it's passed which it reviews every two years in which in this case it hasn't changed that hundred bed rule So what we think we have here is a case where the board under the guise of we can do what we want and we can ignore certain criteria if we want to we don't have to have all of them met they simply abuse their discretion because otherwise what we have is we have no line and we have a board that essentially is saying we are never subject to review because we can simply say well we didn't look at these two or we didn't look at those three but here they ignored them and they did exactly what Vice Chairman Sewell did is they changed the rule for this one either on an arbitrary level which is also arbitrary as different from the Administrative Procedures Act that's what they should have followed and they didn't follow Subsection G talks about performance requirements but it's under the sub part F which is clearly review criteria It does say review criteria yes Let's assume for a minute that this is a performance requirement is that a mandatory rule around a hundred beds   around a hundred beds I don't think it's completely out the window but it should be the way it's written the board wants to change it they could have written it differently they could have said that the objective is 100 beds subject to other countervailing circumstances but they didn't they simply wrote it in the sub section if it was 92 or 95 it wouldn't comply I think you're really suggesting the answer would be yes because that's where the board should step in and say as they suggested maybe our rules aren't that good and if they want to change their rules change the rules but don't change them during the middle of the game and that's exactly what they did here they changed it during the middle of the game for this individual applicant because when the court has reviewed this individual applicant it's been done three times once it was done in 2004 in the circuit court in McHenry County overturned a 54 bed hospital again in 2004 by mercy in Crystal Lake at this location that didn't meet the criteria when the judiciary has looked at them they've all been turned down and we submit that it was appropriate here that this court should also find that it would be arbitrary and capricious to do that. I'm going to spend my two minutes which is what I think I have to answer some of the questions that you all have asked. Justice Shostak you asked counsel do you believe that the reason we haven't found any cases in the appellate court that have reversed the board could that be due to the standard review and I would answer unequivocally yes because the standard review is clearly erroneous and an obvious mistake or arbitrary and capricious so I believe that's why that's happened otherwise this court would be having to consider well is 92 okay is 15 okay that is left to the discretion of the board Justice Hutchison in fact in questions of counsel Mr. Waller you were asking what's been projected in terms of utilization at the new Crystal Lake hospital he said 17% that was only for ICU 91% for the medical surgical beds if it is adopted that's what has been our projection and the 17% for the ICU is compared to the 3% where they're currently sitting in Harvard so the mayor of Harvard by the way spoke out in favor of this proposal as this court may be aware of Steven from the news whenever they're trying to close a hospital the community is out in arms saying you can't close our hospital here they're downsizing the hospital and the mayor and the county I think it was the director of public health of Harvard supported the proposal said that this makes sense Justice Parker I'm going to come back to your original question because I don't think I answered it very well and that deals with the issue of can the board arbitrarily disregard a particular criterion and if you look at the Heidner case and the Greer case that were cited by the board another involved a situation where they were trying to put in that it was the housing development authority whether they had ignored certain criteria neither of those cases had a situation where the board's own rules said the failure of a project to meet one or more of the criteria that the board has discretion and when Mr. Lawler answered the question about that he said well they didn't fully meet one of the criteria. The word fully is not in there. There's no question here that this was a major issue before the board and they asked questions. Justice Shostak you had asked also with respect to is there enough information here as to why the board did what they did. It was discussed, there were questions, and you're absolutely right under the statute, and I read this a little bit differently from Mr. Morris, if the board is granting the project they do not need to give reasons. In fact the legislature after the Medina case said that we want the transcripts from the hearings made part of the records so we can see what they considered. And they did consider it. And by the way Mr. Morris answered the question honestly, they could have asked for a report from the board explaining their decision and they chose not to. And yet they come into the circuit court and say the board didn't give enough reason. They could have asked that. Mercy is not going to, obviously. We got a permit. We understand why they did what they did. Like in the Provina case where they send it back to the board to explain their decision. Could that be done here? If the court found that there was not enough explanation? Or do you feel that's not necessary? Could it be done? Yes. However, the members of the board who voted on it, four or maybe five of the six, explained, we understand what the negatives are, but we're voting for it because we think this makes sense in that community. And Centegrian Advocate are trying to put that burden on you to make a decision as to what makes sense in that community. It clearly did not make sense in at least two or three prior events. Yes, when 50, 70, whatever. And those were on this particular site, correct? Yes. And so, what did Mercy Health do? They came back with the right side and said, this makes sense, board, don't you agree? They went okay. We hear you. We hear you. And they made that decision. Where it's possible to comply with the regulations unlike Maryland. And there's, does there have to be substantial compliance with the otherwise noncompliant regulations? No. There's absolutely no authority for that, your honor. The board has said, again, I don't want to beat this to death, but the failure of the project to meet one or more, it does not say that you have to substantially comply with the particular criterion that you did not meet. There's just no authority for that. What we're missing in Maryland, what I was hoping the court would have included, was how far off were they. I have a feeling in Carbondale, knowing that area in southern Illinois, they would have been way off from 200 open-heart surgeries. I don't think you'll see that many projected in Carbondale, Illinois. But the board said if we didn't allow some flexibility here, they would never have the opportunity to have an opportunity to  about how to comply. But here, you could comply. The criteria are there for the board to consider in making their decision. Some criteria can be met like utilization may be off a little bit, but the board can take that into account. Bed bed     big unit. As you know, each project is different. It's individual, and they have to weigh those factors, and the question is should it be the appellate board that weighs those factors, or should it be the board that has the expertise and the staff? Thank you, Mr. Eaton. Mr. Husek, you're writing feverishly, and you've been writing for more than two minutes, so you better summarize. I think it's just an old habit I have that helps me focus my mind so that I can answer the court's questions and provide the most cogent presentation possible here. So I'd like to make five points, if I may, and certainly  more questions the court has. First, below, the plaintiff's appellees here argued, and the circuit court agreed, that the board completely ignored and disregarded the minimum bed criterion, and that was a violation of its legal duties, and I think the record absolutely shows that they did not disregard or ignore that criterion. That's simply an exaggeration to the point of inaccuracy or falsity. They considered the criterion relevant, not non-existent, and they considered non-compliance with that criterion, and that was made by the other circumstances relevant here, including, in particular, the unmet need for services in this area that were satisfied best by a smaller hospital rather than a 100-bed hospital. Second, an advocate argues that this rule that the board adopted saying that non-compliance does not with any criterion, one or more criterion, does not require denial of an application, gives them this power to do anything they want, and therefore the regulations and standards mean nothing, and it's willy-nilly and pin the tail on the donkey, and that's the definition of random and arbitrary conduct. That argument also creates a false choice. The discretion of the Act and the regulations give the board requirements to evaluate these criterion, to weigh them according to the particular circumstances of this case, and the court is charged with responsibility to determine whether they have done so in a rational manner or in an arbitrary manner, and I submit that the court upon reviewing the record will conclude that they did so in a rational manner. Third, there is an extraordinary effort by resourceful and creative counsel on the other side to argue that the board's rules do not mean what they say, that these criteria, review criteria, are now mandatory, even though the board's regulation section 1130.660 says that noncompliance with one does not require denial of criteria. Why, when they reconsidered the rules, did they not make an adjustment? Is there anything on a record that would indicate? I don't know. Honestly, I wasn't privy to the determinations or the deliberations by the board at that time. I think they probably considered that that is a benchmark that should be maintained and departure with it should be justified, only if the circumstance of the particular case warranted. It's presumptively valid, and they reaffirmed that. And I  the medical experts here and medical expert lawyers can correct me if I'm wrong, but I believe that the 100 bed requirement does tie into some type of federal Medicare or Medicaid standard for certain types of hospitals and compensations. And I think that makes sense and the board decided that in a larger metropolitan area, let's stick with that. Consistent with the paramount statutory goals of trying to avoid overcapacity and underutilization but meeting public needs. I'm thinking about can you make  more affordable for people who need it. I don't know the reasons why they chose to leave it in place at this time. I can only offer educated guesstimates. There is no basis in the law and the courts have repeatedly said that section 1130.660 means what it says. It doesn't impose some standard of only allowing technical noncompliance or treating one criterion as essentially dispositive in all cases. This is just a general matter where the board  has to determine whether it did       it did so in a rational manner. I don't know the reasons why the courts have decided to leave it  there.      why the courts have left it there. Thank you.